## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4721 | **DATE** | 2/27/2003 |
| **CASE TITLE** | Computer Associates etc. Vs. Quest Software, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ____.
(3) ☐ Answer brief to motion due ____. Reply to answer brief due ____.
(4) ☐ Ruling/Hearing on ____ set for ____ at ____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ____ set for ____ at ____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ____ set for ____ at ____.
(7) ☐ Trial[set for/re-set for] on ____ at ____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ____ at ____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Computer Associates' motion for turnover of its proprietary information defendants improperly obtained outside discovery and to bar defendants' use of such information is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| | | 03 FEB 28 AM 9:56 | date mailed notice |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMPUTER ASSOCIATES INTERNATIONAL )
INC., a Delaware corporation, )
)
Plaintiff, )
)
vs. ) No. 02 C 4721
)
QUEST SOFTWARE, INC., a California )
corporation, et al., )
)
Defendants. )

DOCKETED
MAR 0 3 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff alleges that defendant Quest has misappropriated and relied upon its EDBA Source Code to develop defendants' programs. It raised that possibility or likelihood with the corporate defendant (Quest) in June 2000. Quest responded that it was unaware of its having the EDBA Source Code, said it was investigating, and asked for more specific information. Quest repeated that position in September 2000. Then, in February 2002, plaintiff received an anonymous letter in a Quest envelope stating that a former employee of plaintiff (actually, plaintiff's predecessor, but we disregard that), and then an employee of Quest, defendant Wahlgren, had given copies of the EDBA Source Code in November 1999 to other Quest employees for use in a Quest project. It so advised Quest, which responded that it continued to believe that plaintiff's source code had not been improperly used (although it did not deny that it might have possession of the EDBA Source Code) and stated that it was renewing its investigation. Plaintiff brought suit in July 2002. In August 2002, Quest, in its answer, admitted that Wahlgren had distributed the EDBA source code to some Quest employees. In

its December 2002 answers to interrogatories, Quest responded that Wahlgren had indeed obtained the EDBA Source Code when she was employed by plaintiff, that she had distributed copies to certain named other employees, and that all copies were now in the possession of its counsel "and their expert consultant."

In the meantime, Quest had entered into an expert consulting arrangement with an outside expert shortly after the complaint was filed and had furnished him a copy of the EDBA Source Code. He signed a confidentiality agreement, agreeing he would not disclose the contents to any third party. Thereafter, in September, the parties attempted to negotiate a protective order, with disputes about that being resolved by the court on December 30, 2002. In the meantime, the parties agreed to share information (but not source codes) on any "attorneys' eyes only" basis. Quest initially took the position that the Wahlgren EDBA Source Code copies were not produced in discovery, were therefore not covered by the standby agreement, and that it could provide a copy to the consultant but not reveal his name. It did provide a copy of the Wahlgren CD to plaintiff (the CD apparently contains copyright notices and other indicia that the information was claimed to be confidential), while continuing to assert that the Wahlgren CDs were not subject to the protective order. Plaintiff filed this motion for a return of the Wahlgren CDs, requiring Quest to name its expert and specify his works, disqualifying him from further participation in this litigation and preventing any use of any of his work, and reimbursement of fees and costs.

It would have been far better if Quest had conceded that plaintiff had special claims to the protection of the EDBA source code software during the pendency of this litigation when it first disclosed to plaintiff that it had possession of it, having obtained it from Wahlgren.

Much of the subsequent paper battle would have been unnecessary. It was then aware that the software came from plaintiff, which claimed copyright protection and, Quest was given to understand, plaintiff also was claiming it contained trade secrets. As it turns out, the substantial dictates of the protective order have been followed. The name of the expert has been disclosed, he appears to be qualified for designation as an expert, Quest's counsel and that expert have the only copies of the Wahlgren CDs of which Quest is aware, the expert has signed on to the protective order, plaintiff has a copy of Quest's source code, and a copy of the Wahlgren CD, and Quest has a copy of plaintiff's source code, which is apparently identical to that in the Wahlgren CDs. The most that can be said is that Quest did get some head start in analyzing source codes, but that can be adjusted by the discovery schedule, in the unlikely event that is necessary. For now we deny the motion, but with the added admonition that the Wahlgren CDs are subject to the protective order.

JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 27, 2003.